**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **THE TRAVELERS HOME AND** | : | |
| **MARINE INSURANCE COMPANY,** | : | |
|     **Plaintiff,** | : | |
| | : | |
|         **v.** | : | **CIVIL ACTION NO. 15-6089** |
| | : | |
| **HEATHER STAHLEY,** *et al.*, | : | |
|     **Defendants.** | : | |

<u>**MEMORANDUM OPINION**</u>

**Rufe, J.**                                                          **March 3, 2017**

**I.      INTRODUCTION**

      Before the Court is the motion for summary judgment of Plaintiff The Travelers Home And Marine Insurance Company ("Travelers"), which seeks a declaration that it does not have a duty under a homeowner's Policy to defend or indemnify Defendants Brian, Heather, and Tristan Stahley in a state action.  For the reasons that follow, the motion will be granted.

**II.     FACTUAL AND PROCEDURAL HISTORY**

    **A. Julianne Siller's Murder**

      The material facts in this case are undisputed and tragic.  On May 25, 2013, Tristan Stahley, who was sixteen years old, invited his girlfriend Julianne Siller to his parents' home in Montgomery County, Pennsylvania.  At about 8:00 p.m., Tristan and Julianne engaged in a loud verbal altercation, which continued as they drove away from the house.  Shortly thereafter, Tristan killed Julianne by stabbing her repeatedly.  Before the murder, Tristan had a well-documented history of mental health and substance abuse issues, which resulted in a pattern of behavioral and disciplinary problems.[1]  On September 29, 2014, Tristan was convicted of first-

---

[1] Pl.'s Complaint [Doc. No. 1] ¶¶ 10-15.

degree murder after a bench trial in the Montgomery County Court of Common Pleas, and he was sentenced to life imprisonment on December 17, 2014.[2]

### B. The Underlying Civil Action

On May 18, 2015, Gary Siller, Julianne's father and the administrator of her estate, filed a civil complaint seeking compensatory and punitive damages against Tristan and Tristan's parents, Brian and Heather Stahley, in the Montgomery County Court of Common Pleas (the "Underlying Action").[3]  The underlying complaint asserts claims for wrongful death and survival based in part on Brian and Heather Stahley's alleged failure to supervise and control Tristan, as well as their alleged failure to warn Julianne of their son's mental health issues.[4]  More specifically, Gary Siller claims Brian and Heather allowed Tristan to keep various knives and swords at home, including the murder weapon, and failed to prevent Tristan from drinking alcohol at their home on the night of the murder, thereby subjecting Julianne to a high likelihood of serious bodily harm.[5]  Gary Siller and the Stahleys ("Defendants") contend that Travelers has a duty to defend and indemnify the Stahleys in the Underlying Action.[6]

### C. The Homeowner's Insurance Policy

Travelers seeks a declaration that, based on the language of a homeowner's insurance Policy issued to Brian and Heather Stahley, it does not have a duty to defend or indemnify them.[7]  The parties agree the Policy was in effect at the time of the murder.[8]

---

[2] Pl.'s Complaint [Doc. No. 1] ¶¶ 17-21; *Commonwealth of Pennsylvania v. Tristan Brian Stahley*, CP-46-CR-0005026-2013 (Montgomery County Common Pleas verdict September 29, 2014).

[3] Civil Action Number 15-10432.

[4] Pl.'s Complaint [Doc. No. 1] Ex. A ¶¶ 15-20.

[5] *Id*. Ex A ¶ 19.

[6] Def. Siller's Answer [Doc. No. 7] ¶ 32; Def. Stahleys' Answer [Doc. No. 8] ¶ 36.

[7] Pl.'s Complaint [Doc. No. 1] ¶ 32. While Travelers is defending Brian and Heather Stahley in the Underlying Action pending the outcome of this action, it has declined to defend Tristan. *Id.* ¶ 31.

[8] Pl.'s Complaint [Doc. No. 1] at 28.

The Policy requires Travelers to defend and indemnify "an 'insured' for damages because of 'bodily injury' or 'property damage' caused by an 'occurrence' to which this coverage applies . . . ."[9] An "insured" is defined as "you [Brian and Heather Stahley] and residents of your household who are (a) your relatives; or (b) other persons under the age of 21 and in the care of any person named above."[10] An "occurrence" is defined as an "accident . . . which results, during the policy period, in 'bodily injury' or 'property damage.'"[11] The policy expressly excludes from coverage "'bodily injury' or 'property damage' which is expected or intended by an 'insured.'"[12] The Policy also contains a "severability clause," which states that the insurance policy "applies separately to each 'insured.'"[13]

## III.    STANDARD OF REVIEW

Upon motion of a party, summary judgment may be granted when, "after considering the record evidence in the light most favorable to the nonmoving party, no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law."[14] A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.[15] A factual dispute is "material" only if it might affect the outcome of the suit under governing law.[16] To establish a genuine issue of material fact, the non-moving party must introduce evidence beyond the mere pleadings to create an issue of material fact on "an element essential to that party's case, and on which that party will bear the burden of proof at trial."[17]

---

[9] Pl.'s Complaint [Doc. No. 1] at 56-57.

[10] *Id.* at 41.

[11] *Id*. at 42.

[12] *Id*. at 58.

[13] *Id*. at 62.

[14] *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990).

[15] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[16] *Aleynikov v. Goldman Sachs Grp., Inc.*, 765 F.3d 350, 358 (3d Cir. 2014).

[17] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Evidence that is "merely colorable" or is "not significantly probative," does not raise a genuine issue of material fact.[18]  Therefore, if, after making all reasonable inferences in favor of the non-moving party, the court determines that there is no genuine dispute as to any material fact, summary judgment is appropriate.[19]

## IV.    DISCUSSION

Travelers instituted this action under the Declaratory Judgment Act, seeking a declaration that it has no obligation to defend or indemnify the Stahleys in the Underlying Action.[20]  The principal issue before the Court is whether under Pennsylvania law, a clause excluding intentional acts by "an insured" bars innocent co-insureds from coverage, or only the insured who committed the intentional act.

### A. Applicable Insurance Contract Interpretation Principles

The interpretation of an insurance policy is a question of law that may be decided on a motion for summary judgment.[21]  In determining the scope of insurance coverage, "a court should ascertain the intent of the parties as manifested by the language of the policy."[22]  When the language is clear and unambiguous, it should be given its "plain and ordinary meaning"[23] and

---

[18] *Equimark Commercial Fin. Co. v. C.I.T. Fin. Servs. Corp.*, 812 F.2d 141, 144 (3d Cir. 1987).

[19] *Celotex*, 477 U.S. at 322.

[20] 28 U.S.C. § 2201. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a)(1) as the parties are diverse and the amount in controversy exceeds $75,000.  When a federal district court presides over a case grounded in diversity jurisdiction, the court must apply the substantive law of the state in which the cause of action arose. *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938).  The parties agree that Pennsylvania law controls this case.

[21] *Med. Protective Co. v. Watkins*, 198 F.3d 100, 103 (3d Cir. 1999); *see also Standard Venetian Blind Co. v. Am. Empire Ins. Co.*, 469 A.2d 563, 566 (Pa. 1983); *Equibank v. State Farm Mut. Auto. Ins. Co.*, 626 A.2d 1243, 1245 (Pa. Super. Ct. 1993).

[22] *Allstate Ins. Co. v. Lombardi*, 142 F. App'x 549, 550 (3d Cir. 2005).

[23] *Id.*; *see also St. Paul Fire & Marine Ins. Co. v. United States Fire Ins. Co.*, 655 F.2d 521, 524 (3d Cir. 1981) ("[A] court should read the policy provisions to avoid ambiguities, if possible, and not torture the language to create them."); *Great Am. Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 194 A.2d 903, 905 (Pa. 1963) ("[T]he words contained in the policy must be given a reasonable and normal interpretation."); *Monti v. Rockwood Ins. Co.*, 450 A.2d 24, 25 (Pa. Super. Ct. 1982) ("[A]n insurance policy must be read in its entirety, and its words are to be given their plain and proper meanings.").

the "court must give effect to every word that can be given effect."[24]   However, where a policy

provision is ambiguous, ambiguities should be construed against the insurance company.[25]   A

provision is considered ambiguous if "reasonable persons on considering it in the context of the

entire policy could honestly differ as to its meaning."[26]

Under Pennsylvania law, an insurer's duty to defend is distinct from, yet intertwined

with, an insurer's duty to indemnify.[27]   A duty to defend arises when claims asserted by the

injured party in the underlying complaint "may potentially" come within the policy coverage.[28]

To that end, a court must examine "only those factual allegations made within the four corners"

of the underlying complaint.  If "the complaint on its face states a claim to which the policy

*potentially* applies, the insurer must defend."[29]   An insurer's duty to indemnify is more limited.[30]

It arises "only when the insured is determined to be liable for damages within the coverage of the

policy."[31]   Thus, if a court determines that the insurer has no duty to defend in an underlying

action, judgment in the insurer's favor with regard to the duty to indemnify is also appropriate.[32]

---

[24] *Mut. Benefit Ins. Co. v. Politsopoulos*, 115 A.3d 844, 853 (Pa. 2015) (citing *Newman v. Mass. Bonding & Ins. Co.*, 65 A.2d 417, 419 (Pa. 1949)).

[25] *Politsopoulos*, 115 A.3d at 852 n.6.

[26] *Imperial Cas. & Indem. Co. v. High Concrete Structures, Inc.*, 858 F.2d 128, 131 (3d Cir. 1988); *see also Adelman v. State Farm Mut. Auto. Ins. Co.*, 386 A.2d 535, 538 (Pa. Super. Ct. 1978).

[27] *See, e.g., Allstate Ins. Co. v. Key-Berthau*, No. 2:08-cv-768, 2008 U.S. Dist. LEXIS 104905, at *13 (E.D. Pa. Dec. 19, 2008) ("Where the underlying complaint makes at least one allegation that falls within the scope of the policy's coverage, the duty to defend is triggered, even where an insured is ultimately found to be not liable."); *State Farm Fire & Cas. Co. v. Bellina*, 264 F. Supp. 2d 198, 203 (E.D. Pa. 2003) ("The insurer must defend the insured, even if the suit is 'groundless, false, or fraudulent' and 'has no basis in fact.'"); *Allstate Ins. Co. v. Hopfer*, 672 F. Supp. 2d 682, 685 (E.D. Pa. 2009) ("The duty to defend . . . may arise where the duty to indemnify does not later come to fruition.").

[28] *Frog, Switch & Mfg. Co., Inc. v. Travelers Ins. Co.*, 193 F.3d 742, 746 (3d Cir. 1999).

[29] *D'Auria v. Zurich Ins. Co.*, 507 A.2d 857, 859 (Pa. Super. Ct. 1986); *see also Visiting Nurse Ass'n of Greater Philadelphia v. St. Paul Fire and Marine Ins. Co.*, 65 F.3d 1097, 1100 (3d Cir. 1995).

[30] *J.H. France Refractories Co. v. Allstate Ins. Co.*, 626 A.2d 502, 510 (Pa. 1993).

[31] *Sphere Drake, P.L.C. v. 101 Variety, Inc.*, 35 F. Supp. 2d 421, 427 (E.D. Pa. 1999).

[32] *See, e.g., Germantown Ins. Co. v. Martin*, 595 A.2d 1172, 1176 (Pa. Super. Ct. 1991).

**B. Scope of the Term "Occurrence"**

A threshold issue is whether the circumstances resulting in Julianne's death constituted an "occurrence" within the meaning of the Policy.  As noted, "occurrence" is defined in the Policy as an "accident . . . which results, during the policy period, in 'bodily injury' or 'property damage.'"[33]  Travelers contends that, because the murder was intentional, this incident, including any negligence that allowed it to occur, falls outside the scope of an "occurrence."[34]

It is well-settled in Pennsylvania that an intentional act, such as the murder itself, may not be considered an "occurrence" for insurance purposes.[35]  However, in *Donegal Mutual Insurance Co. v. Baumhammers*,[36] the Pennsylvania Supreme Court determined that the alleged negligence of parents related to their son's intentional and criminal actions may constitute an "occurrence," because from the parents' perspective, "[the victims'] injuries were caused by an event so unexpected, undesigned and fortuitous" as to qualify as accidental.[37]  Consequently, the court held that Pennsylvania law required the insurer to defend the parents against claims of negligence, "even where that alleged negligence may have led to the intentional acts of a third party."[38]  Thus, the alleged negligence of Brian and Heather Stahley constitutes an "occurrence" within the meaning of the Policy.

---

[33] Pl.'s Complaint [Doc. No. 1] at 42.

[34] Pl.'s Complaint [Doc. No. 1] ¶¶ 24-26. Travelers does not argue that, because Julianne's murder did not occur at their home, Brian and Heather's alleged negligence falls outside the scope of an "occurrence."  The Policy does not appear to explicitly exclude "occurrences" which take place outside the insured premises.  Moreover, Brian and Heather's negligence is alleged to have occurred at their home.

[35] *Gene's Rest., Inc. v. Nationwide Ins. Co.*, 548 A.2d 246, 247 (Pa. 1988); *see also Wiley v. State Farm Fire & Cas. Co.*, 995 F.2d 457, 460 (3d Cir. 1993) ("[F]or the resulting injury to be excluded from coverage, the insured must have specifically intended to cause harm.").

[36] 938 A.2d 286 (Pa. 2007).

[37] *Baumhammers*, 938 A.2d at 293.

[38] *Id*. at 292.

6

### C. Effect of the Intentional Act Exclusion

Even though Brian and Heather Stahley's alleged negligence constitutes an "occurrence," the intentional act exclusion in the Policy bars coverage. The intentional act exclusion states:

> [Personal Liability] coverage [does] not apply to "bodily injury" or "property damage":
>
> 1. Which is expected or intended by *an "insured"* even if the resulting "bodily injury" or "property damage":
>
>     a. Is of different kind, quality or degree than initially expected or intended; or
>
>     b. Is sustained by a different person, entity, real or personal property than initially expected or intended.[39]

When an insurer seeks to deny coverage based on an exclusion, it bears the burden of demonstrating that the exclusion applies.[40] Travelers contends that because the exclusion applies where the bodily injury results from the intentional act of "an insured" under the Policy, and Tristan undoubtedly committed an intentional act, the exclusion bars coverage of all insureds.[41] Defendants argue that the intentional act exclusion does not apply to Brian and Heather Stahley because the use of "an insured" makes the provision applicable only to Tristan, and therefore does not preclude his parents from defense and indemnification.[42]

Courts in Pennsylvania examine the terms of the contract to determine the nature of the coverage provided.[43] Whether the intentional act of one co-insured will also preclude coverage of innocent co-insureds hinges upon the exclusionary language used in the policy.[44] If the language clearly establishes that the obligations of the insureds are joint, then the "prohibited

---

[39] Pl.'s Complaint [Doc. No. 1] at 58 (emphasis added).

[40] *Little v. MGIC Indem. Corp.*, 649 F. Supp. 1460, 1466 (W.D. Pa. 1986), *aff'd*, 836 F.2d 789 (3d Cir. 1987).

[41] Pl.'s Motion for Summary Judgment [Doc. No. 18] ¶ 18.

[42] Def. Stahleys' Response [Doc. No. 19-2] at 7-10; Def. Siller's Response [Doc. No. 20] at 8-12.

[43] *See, e.g, Spezialetti v. Pac. Emp'rs Ins. Co.*, 759 F.2d 1139, 1141 (3d Cir. 1985).

[44] *McAllister v. Millville Mut. Ins. Co.*, 640 A.2d 1283, 1288 (Pa. Super. Ct. 1994).

acts of one insured [will] bar all others from recovering."[45]  However, if after examination of the

policy, the court cannot determine whether the obligations of the co-insureds are joint or several,

the ambiguity must be resolved in favor of coverage for the insureds, finding the obligations

separate.[46]  This determination often turns on whether the exclusionary provision applies to "the

insured," "an insured," or "any insured."[47]

Under the Policy here, the intentional act exclusion applies to bodily injury expected or

intended by "*an* insured."  Pennsylvania courts have interpreted provisions applying to "an

insured" as having the same exclusionary effect as provisions referring to "any insured."[48]  In

*McAllister v. Millville Mutual Insurance Co.*,[49] the Pennsylvania Superior Court considered the

effect of an intentional act exclusion that precluded coverage for "an act committed by or at the

---

[45] *Id.*

[46] *Id.* at 1287-88.

[47] Courts have interpreted exclusionary provisions applying to "*the* insured" to establish separate obligations under Pennsylvania law.  *See e.g. Opat v. State Farm Fire & Cas. Ins. Co.*, 542 F. Supp. 1321, 1326-27 (W.D. Pa. 1982) (where husband and wife owned a home as tenants by the entireties, which was intentionally destroyed by the wife, court found in favor of the husband, holding that the insurance claims of the husband and wife were severable: "[W]e find it to be a reasonable interpretation of the policy that the term '[the] insured' in the fraud clause refers to 'the insured who (1) is responsible for causing the loss and (2) is seeking to recover under the policy,' and not jointly to all the insureds.").  Conversely, where an exclusionary provision applies to "*any* insured," insureds' obligations under the policy are interpreted as joint, such that prohibited acts performed by one insured will bar all others from coverage.  *See, e.g.*, *Spezialetti*, 759 F.2d at 1141-42 ("The deficiency does not exist here where the policy refers to 'any insured,' not 'the insured.' . . . We have no difficulty in determining that in this case 'any insured' means one covered by the policy issued on the bakery premises."); *Key-Berthau*, 2008 U.S. Dist. LEXIS 104905, at *9 ("[T]he inclusion of the word 'any' effectively prevents coverage where one of the insured individuals falls within the exclusion."); *Donegal Mut. Ins. Co. v. Baumhammers*, 893 A.2d 797, 818 ("The fact that Parents did not engage in criminal behavior is immaterial because the [policy] exclusion applies to criminal behavior of any insured.").

[48] *Allen*, 708 A.2d at 832 (discussing *McAllister*, "[W]e concluded that the 'innocent' co-insured could not recover and drew a distinction between the usage of the term 'the insured,' which indicated separate insurable interests, and 'any insured' or 'an insured,' which indicated joint insurable interests."); *see also Baumhammers*, 893 A.2d at 818-19 (discussing *McAllister*, "[E]xclusions in fire insurance policy indicating that no coverage was provided when loss was result of neglect by 'any' insured or intentional act by 'an' insured, precluded recovery by insured who did not set fire because another insured intentionally set fire."); *Pa. Mfrs. Assoc. Ins. Co. v. Aetna Cas. & Sur. Ins. Co.*, 233 A.2d 548, 550 (Pa. 1967) ("'The insured' has *not* been interpreted to mean 'an insured' or 'any insured.' It has merely been interpreted as the language dictates, to include the named insured.").

[49] 640 A.2d 1283 (Pa. Super. Ct. 1994).

direction of *an insured* and with the intent to cause a loss."[50]  The policy in *McAllister* covered a house that was destroyed by a fire that one of the named insureds intentionally set.  The insurance company claimed that the wording of the exclusion clearly and unambiguously precluded recovery by the other innocent co-insureds.[51]  In reversing the trial court, the Superior Court agreed with the insurer, and held that "[t]he use of the terms '*any*' and '*an*' in the exclusions clearly indicate[s] that the insureds' obligations under the policy's neglect and intentional provisions are joint, not several."[52]

Therefore, the Court concludes that the Pennsylvania Supreme Court would interpret a provision applying to "an insured" as having the same exclusionary effect as a provision referring to "any insured."  Accordingly, the intentional act exclusion in the Policy bars coverage of Brian and Heather Stahley by Travelers.

### D. Effect of the Severability Clause

Defendants contend that the existence of a severability clause in the Policy removes the joint obligations imposed by the intentional act exclusion, and supports their argument that "an

---

[50] *Id.* at 1285 (emphasis added).  The policy in *McAllister* also contained an additional exclusion precluding coverage for "neglect by 'any insured' to use all reasonable means to save and preserve covered property when endangered by a peril insured against."  *Id.*

[51] *Id.* at 1286.

[52] *Id.* at 1289. This reasoning is in line with the approach embraced by a majority of jurisdictions, which have acknowledged the "potential differences in meaning which may be taken from the selective use of definite and indefinite articles in association with the word 'insured' as employed in insurance policy exclusions." *Politsopoulos*, 115 A.3d at 851.  *See, e.g., Allstate Ins. Co. v. Gilbert*, 852 F.2d 449, 454 (9th Cir. 1988) ("We agree . . . that 'an insured' refers to all insureds under the policy."); *Vance v. Perkin Ins. Co.*, 457 N.W.2d 589, 593 (Iowa 1990) (holding that under a homeowner's policy stating that the policy did not insure for any loss arising out of any acts committed by "an insured," all insureds were barred from recovery if any insured committed the act); *Johnson v. Allstate Ins. Co.*, 687 A.2d 642, 644 (Me. 1997) ("Based on the language of the policy, we hold that by excluding coverage for damages intentionally caused by 'an insured person,' Allstate unambiguously excluded coverage for damages intentionally caused by *any* insured person under the policy."); *Woodhouse v. Farmers Union Mut. Ins. Co.*, 785 P.2d 192 (Mont. 1990) (policy exclusion for loss caused by intentional act of "an insured" barred recovery by innocent insured); *Dolcy v. Rhode Island Joint Reinsurance Assn.*, 589 A.2d 313 (R.I. 1991) (holding that a homeowner's policy exclusion for intentional losses committed by "an insured" imposed a joint obligation on co-insureds not to commit arson); *Co-operative Ins. Cos. v. Woodward*, 45 A.3d 89, 94 (Vt. 2012) ("[T]here is no 'meaningful difference' between the terms 'an insured' and 'any insured.'").

9

insured" in the intentional act exclusion refers solely to the insured who directly committed the intentional act.  Alternatively, Defendants argue that the severability clause renders the intentional act exclusion ambiguous, and the intentional act exclusion should therefore be construed against the insurer.[53]  Travelers maintains that the severability clause does not change the effect of the intentional act exclusion.[54]  The severability clause provides:

> Severability of Insurance. This insurance applies separately to *each* "*insured.*"
> This condition will not increase our limit of liability for any one "occurrence."[55]

Pennsylvania courts have addressed the effect of a severability clause on exclusions referring to "any insured."[56]  After conducting a comprehensive survey of Pennsylvania case law, one court in this District concluded that "the bulk of courts which have addressed the issue have held that an exclusion worded 'any insured' unambiguously expresses a contractual intent to create joint obligations and [to] preclude coverage to innocent co-insureds," regardless of the existence of a severability clause in the policy.[57]  A severability clause therefore does not modify a policy's exclusion when the exclusion provision applies to "any insured."  Conversely, where a policy exclusion refers to "the insured," the existence of a severability clause further supports the interpretation of each insured as separate.[58]

The Pennsylvania Superior Court addressed the interaction of an exclusion worded "an insured" with a severability clause in *McAllister*.  The trial court in *McAllister* had held that the interaction between a severability clause and an intentional act exclusion applying to "an

---

[53] Def. Siller's Response [Doc. No. 20] at 11-12.

[54] Pl.'s Reply [Doc. No. 21] at 6.

[55] Pl.'s Complaint [Doc. No. 1] at 62 (emphasis added).

[56] *See, e.g.*, *Michael Carbone, Inc. v. Gen. Accident Ins. Co.*, 937 F. Supp. 413 (E.D. Pa. 1996); *Strouss*, 2005 U.S. Dist. LEXIS 2639, at *15 (E.D. Pa. Feb. 22, 2005) ("[A]n exclusion worded 'any insured' unambiguously expresses a contractual intent to create joint obligations and [to] preclude coverage to innocent co-insureds, despite the existence of a severability clause in the policy.") (internal quotation omitted).

[57] *Michael Carbone*, 937 F. Supp. at 422.

[58] *Allen*, 708 A.2d at 833, n.9.

10

insured" rendered the policy ambiguous as to whether the exclusion would in fact bar coverage to all innocent co-insureds.  The Superior Court reversed, noting that the trial court's interpretation "tortures the plain and unambiguous meaning of the policy" at issue.[59]  Instead, the court held that the use of the terms "any" and "an" in an intentional act exclusion clearly and unambiguously creates joint obligations for the insureds, regardless of the existence of a severability clause.[60]

Thus, the intentional act exclusion of Travelers' policy precludes coverage for the Stahleys, even though the policy also contains a severability clause.  As a result, the existence of a severability clause in the Policy does not override the clear and unambiguous language of the intentional act exclusion, and the terms of the Policy preclude coverage to all named insureds under these circumstances.[61]  Consequently, Plaintiff does not have a duty to defend or indemnify the Stahleys in the Underlying Action.

## V.     CONCLUSION

For the reasons stated above, and as there exists no genuine issue of material fact, Plaintiff's motion for summary judgment is granted.  An appropriate Order follows.

---

[59] *McAllister*, 640 A.2d at 1289.

[60] *Id.* ("Notwithstanding the provision which defines each named insured as a 'separate insured' under the policy, the policy specifically provides that [insurer] will not pay for loss resulting from . . . the intentional acts of 'an insured.' The use of the terms 'any' and 'an' in the exclusions clearly indicate that the insureds' obligations under the policy . . . are joint, not several.").  This result is consistent with decisions rendered in a majority of jurisdictions, which have held that a severability clause does not render an exclusion provision using the term "any" or "an" ambiguous.  *See, e.g., Politsopoulos*, 115 A.3d at 851 n.5 (the "great majority of courts . . . apply the rule that a separation-of-insureds clause does not negate the effect of a plainly worded exclusion"); *Postell v. Am. Family Mut. Ins. Co.*, 823 N.W.2d 35, 46 (Iowa 2012) ("Thus, the severability clause serves to reinforce the language differentiating between joint obligations ('any' or 'an' insured) and separate obligations ('the' insured)."); *Am. Nat'l Prop. & Cas. Co. v. Clendenen*, 793 S.E.2d 899, 912 (W. Va. 2016) ("We have in the past concluded that the 'an insured' language, and implicitly the 'any insured' language, is clear and unambiguous. Such language means what it says, and the severability clause does not operate to override this clear and unambiguous language."); *J.G. v. Wangard*, 753 N.W.2d 475, 487 (Wis. 2008) (holding that an exclusion concerning "any" insured is unambiguous, even when read in context with the severability clause in the policy).

[61] Because the Court finds that Plaintiff does not have a duty to defend or indemnify Defendants, it need not address Plaintiff's additional argument that indemnification in this circumstance would violate public policy.